UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**BENJAMIN AHERN,**

                        Plaintiff,

            v.                                                    5:01-CV-577 (HGM/GHL)

**CITY OF SYRACUSE, SEAN GOODEVE,**
**Individually and in his official capacity as a**
**Syracuse Police Officer in and for the City of**
**Syracuse, and P. HANLEY, Individually and**
**in his official capacity as a Syracuse Police**
**Officer in and for the City of Syracuse,**

                        Defendants.

_____

**APPEARANCES:**                                    **OF COUNSEL:**

W. PATRICK MULLIN, ESQ.
Attorney for Plaintiff
215 East Water Street
Syracuse, New York13202

TERRI BRIGHT, ESQ.                                 JAMES P. MCGINTY, ESQ.
Corporation Counsel
City Of Syracuse
Attorney for Defendants
300 City Hall
Syracuse, New York 13202

**HOWARD G. MUNSON**
**Senior United States District Judge**

**MEMORANDUM - DECISION AND ORDER**

        Plaintiff, Benjamin Ahern, brings this civil rights action for damages, pursuant to 42 U.S.C.

§ 1983, alleging excessive force, assault and battery, false arrest and false imprisonment, malicious

prosecution, and negligent employment, supervision, and training against defendants the City of

Syracuse ("City"), and Syracuse Police Department ("SPD") Officers Sean Goodeve and P. Hanley

(collectively "defendants").   Currently before the court is defendants' motion for summary

judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff opposes defendants' motion.  For the reasons that follow below, defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

### I.    Complaint and Procedural History

On March 30, 2001, plaintiff filed a complaint in New York State Supreme Court against defendants.  On April 13, 2001, plaintiff filed an amended complaint in the New York State Supreme Court.  Plaintiff asserted a federal cause of action pursuant to 42 U.S.C. § 1983 against defendants alleging that Goodeve and Hanley used excessive force in securing his arrest for violating a local ordinance, which proscribed skateboarding.  Plaintiff also asserted that defendants: violated his state constitutional rights; committed assault and battery against him; subjected him to false arrest and malicious prosecution; and that the City negligently employed, supervised and trained members of the SPD.  On April 20, 2001, defendants removed plaintiff's action to the United States District Court for the Northern District of New York and shortly thereafter filed their answer to plaintiff's amended complaint.  The parties have since engaged in discovery and defendants now bring this motion for summary judgment.

Before proceeding further, the court must address and resolve a dispute between the parties with respect to the timeliness of defendants' reply papers.  In a letter to the court, plaintiff's counsel asserts that defendants' reply papers, in accordance with Local Rule 7.1(b)(1)(C), were due fourteen calendar days from the date on which the opposition papers were served by the opposing party. Plaintiff's counsel argues that because his client's opposition papers were hand-delivered to defendants' counsel's office on July 29, 2002, the deadline for serving reply papers was no later than August 12, 2002.  The court agrees with plaintiff's counsel's calculation: the day of service for plaintiff's opposition papers was July 29, 2002; thus, fourteen days later, exclusive of the date of

service, was August 12, 2002.  As plaintiff's counsel notes, however, the parties stipulated to extend

the motion filing package deadline to August 13, 2002.  Plaintiff's counsel, however, did not receive

defendants' reply papers until August 14, 2002, and requests that the court disregard defendants'

reply papers.

In a letter to the court, defendants' counsel replied to plaintiff's counsel's arguments by

asserting that defendants filed their motion package just prior to 5:00 p.m. on August 13, 2002, and

that given the late hour and the past difficulty they had experienced in attempting to serve plaintiff's

counsel, they opted to mail their reply papers.  Defendants' counsel argues that plaintiff's counsel

acknowledges having received defendants' reply papers on August 14, 2002, and that because no

surreply is permitted under the rules, plaintiff endured no prejudice by the brief tardiness of

defendants' reply papers.   In this instance, the court finds that the brief tardiness of defendants'

reply papers was harmless and declines to disregard them.

Before proceeding to the facts, the court must address a deficiency in plaintiff's opposition

papers.  In responding to Defendants' six-page, thirty-four paragraph Statement of Material Facts,

plaintiff's counsel strayed from the requirements of Local Rule 7.1(a)(3).  Although plaintiff's

counsel filed a six-page, thirty paragraph "counter-statement of facts" in which he "dispute[d]

Defendants' Statement of Material Facts," *see* Dkt. No. 27, Pl.'s Statement of Material Facts, his

response failed to "mirror the movant's Statement of Material Facts by admitting and/or denying

each of the movant's assertions in matching numbered paragraphs."  L.R. 7.1(a)(3).   The Local

Rules are not empty formalities and the court is of course aware that "<u>Any facts set forth in the</u>

<u>Statement of Material Facts shall be deemed admitted unless specifically controverted by the</u>

<u>opposing party</u>."  <u>Id.</u>  Plaintiff's failure to inform the court of the bases for his disagreement with

defendants' Statement of Material Facts has done anything but facilitate the court's judgment.

Nonetheless, in the interest of judicial economy, the court exercises its discretion to "conduct an

assiduous review of the record in order to weigh the propriety of granting" defendants' motion. Jones v. Smithkline Beecham Corp., 309 F.Supp.2d 343, 346 n. 4 (N.D.N.Y.2004) (citing Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 291 (2d Cir.2000)).  The court finds that plaintiff's counsel's response papers, *i.e.*, the Counter-Statement of Material Facts and Memorandum of Law, have sufficiently controverted certain facts asserted by defendants in their Statement of Material Facts, albeit without the convenience of matching numbered paragraphs. Therefore, the following constitutes the court's compilation of established material facts, as well as the parties' disputed accounts, based upon those facts set forth in Defendants' Statement of Material Facts and Memorandum of Law, and Plaintiff's Counter-Statement of Facts and Memorandum of Law.

## II.    Facts

On July 13, 2000, plaintiff and two acquaintances, Kevin Page and John Cronin,  were skateboarding around the City.  Specifically, plaintiff, Page and Cronin skateboarded on Marshall Street, at the Everson Museum, and in the Armory Square area.  In the Armory Square area, plaintiff skateboarded on Walton and Clinton Streets.  *See* Dkt. No. 25, Defs.' Statement of Material Facts at ¶¶ 1-5.  As officers assigned to the Division of Community Policing, SPD Officers Hanley and Goodeve patrolled the City's streets on bicycles.  Id. at ¶ 6.  Officers Hanley and Goodeve, *inter alia*, enforced the City's Revised General Ordinances Section 16-14.1,[1] which prohibits skateboarding in the City's Special Assessment District.[2]    *See* Dkt. No. 25, Defs.' Statement of

---

[1]City's Revised General Ordinances Section 16-14.1(2) states : "[n]o person shall use, operate or permit the use of any skateboard or like instrument on any sidewalk, street, parking lot, or other public place in the area of the City . . . known as the Special Assessment District, as defined in Chapter 38 of the Revised General Ordinances of the City . . . ." Dkt. No. 29, Mullin Aff. at Ex 2.

[2]The Special Assessment District lies within the following boundaries: "[b]eginning at the intersection of the present northerly line of East Adams Street, with the westerly boundary of Interstate Route #81; thence northerly and westerly, along said westerly and southerly boundary of Interstate Route #81 and the southerly boundary of Interstate #690 to its intersection with the easterly line of Onondaga Creek; thence southerly, along said easterly line of Onondaga Creek to its intersection with the present northerly line of West Adams Street; thence easterly, along said northerly lines

4

Material Facts

at ¶ 8.  At some time during the early evening hours, Officers Hanley and Goodeve informed Page

and Cronin that skateboarding was not permitted in the downtown area and asked them to inform

plaintiff of same.  *See* Dkt. No. 26, Defs.' Mem. of Law at 1.  Nevertheless, Officer Hanley later

observed plaintiff skateboarding on Walton Street and told him that he could not skateboard on the

street.  *See* Dkt. No. 25, Defs.' Statement of Material Facts at ¶ 7.  Soon thereafter, Officer Goodeve

also observed plaintiff skateboarding on Walton Street and Clinton Street, pursued him on his

bicycle and instructed him to dismount his skateboard.  *See* Dkt. No. 26, Defs.' Mem. of Law at 1.

Although plaintiff concedes that he heard someone shout "stop," he contends that he was unaware

who made such a command and toward whom the command was made.  *See* Dkt. No. 28, Pl.'s Mem.

of Law at 2.  In any event, when plaintiff did not comply with Officer Goodeve's request, Officer

Goodeve rode his bicycle in front of plaintiff and thereby forced him to stop at the 400 Block of

Clinton Street.[3]  *See* Dkt. No. 25, Defs.' Statement of Material Facts at ¶ 11; Dkt. No. 32, Finn Aff.

at Ex. M, Incident Report.

   The occurrence and exact sequence of the following events is unclear because the parties'

accounts vary widely; however, it is clear to the court that what was initially a mere violation of a

City quality of life ordinance escalated to a physical altercation between the parties, which resulted

in the custodial arrest of plaintiff.  According to defendants, Officer Goodeve simply approached

plaintiff and plaintiff became aggressive.  *See* Dkt. No. 26, Defs.' Mem. of Law at 1.  Officer

Goodeve then observed plaintiff step back, and he inferred that plaintiff was about to flee on foot.

In response, Officer Goodeve grabbed plaintiff's left arm to prevent him from fleeing whereupon

_____

of West Adams and East Adams Street to the place of beginning."  Dkt. No. 30, Finn Reply Decl. at Ex. B.

   [3]The 400 Block of Clinton Street is within the City's Special Assessment District.

plaintiff clenched his fists and puffed out his chest in a threatening manner.  *See* Dkt. No. 26, Defs.'
Mem. of Law at 1-2.  Officer Goodeve then advised plaintiff that he was under arrest for the
skateboarding violation and attempted to corral him.  Officer Goodeve maintains that when he
attempted to place plaintiff under arrest, a struggle ensued in which plaintiff twisted his body and
attempted to pull away.  Officer Hanley then joined the fracas and secured plaintiff's right arm.
Plaintiff, however, struggled against the officers as they attempted to handcuff him, which caused
him to fall to the ground.  *See* id. at 2.

Plaintiff disputes defendants' account of his arrest.  Plaintiff alleges that upon stopping in
front of him, Officer Goodeve dismounted his bicycle and then without provocation: engaged in
confrontational dialogue; immediately grabbed him; and began to handcuff him.  *See* Dkt. No. 28,
Pl.'s Mem. of Law at 2.  Plaintiff maintains that he did not turn his back to Officer Goodeve.  *See*
id.  Plaintiff alleges that when Officers Goodeve and Hanley handcuffed him, one of them lifted his
arm above his shoulder "like a chick wing and applied pressure."  *See* Dkt. No. 27, Pl.'s Counter-
Statement of Material Facts at ¶ 8.  Plaintiff alleges that Officers Goodeve and Hanley lifted him off
his feet and then pushed him to the ground with his shoulder and hip absorbing the impact.  *See* id.;
Dkt. No. 28, Pl.'s Mem. of Law at 2.  Plaintiff maintains that at no time did he struggle with Officers
Goodeve and Hanley.  *See* id. at ¶ 9.

Once Officers Goodeve and Hanley handcuffed plaintiff, they asked him for identification.
*See* Dkt. No. 27, Defs.' Counter Statement of Material Facts at ¶ 10.[4]  At the time, plaintiff could
only produce a credit card bearing his mother's name, which included plaintiff's surname, but he
stated that his driver's license was located in his car parked near the Everson Museum.  *See* Dkt. No.

---

[4]Although defendants deny this fact, their denial is based upon plaintiff's incorrect citation to the record.
Plaintiff cites Dkt. No. 32, Finn Aff. at Ex. K, Goodeve Dep. at 17-20; Hanley Dep. at 57-58.  A brief review of the
depositions in question reveals that they support plaintiff's account.  *See* id. at Ex. K, Goodeve Dep. at 25-26; Hanley
Dep. at 64-65.

25, Defs.' Statement of Material Facts at ¶ 16.  Officers Goodeve and Hanley arrested plaintiff: for

violating the City's Revised General Ordinance section 16.14.1(2), and resisting arrest pursuant to

New York State Penal Law Section 205.30.  *See* Dkt. No. 25, Defs.' Statement of Material Facts at

¶¶ 15, 21.  According to the SPD incident report, Plaintiff was then transported to the Justice Center

by two SPD Officers in an SPD patrol vehicle.  *See* Dkt. No. 25, Defs.' Statement of Material Facts

at ¶ 26; Dkt. No. 27, Pl.'s Counter-Statement of Material Facts at ¶ 14.  Page and Cronin, who had

remained in the vicinity during plaintiff's arrest, *see generally* Dkt. No. 32, Finn Aff. at Ex. L, Page

Dep. at 28-40, then left the scene to retrieve plaintiff's identification.  Their retrieval effort

somewhat successful, they proceeded to the Public Safety Building where Cronin presented Officer

Goodeve with plaintiff's expired Le Moyne College photographic identification card, an insurance

card, and an insurance bill.  *See* Dkt. No. 28, Pl.'s Mem. of Law at 3.

There are but minor disputes as to the aftermath of plaintiff's custodial arrest.  An SPD

officer found a plastic baggie of marihuana in the back seat of the patrol car used to transport

plaintiff to the Justice Center.  *See* Dkt. No. 27, Pl.'s Counter-Statement of Material Facts at ¶ 14;

Dkt. No. 31, Defs.' Reply Statement at ¶ 14.  Prior to plaintiff's transportation, the patrol car was

checked for contraband, but none was found.  *See* Dkt. No. 26, Defs.' Mem. of Law at 2.  While at

the Justice Center, Officer Hanley telephoned Officer Goodeve and stated that "we have to give him

[plaintiff] an appearance ticket on the UPM" [unlawful possession of marijuana].  *See* Dkt. No. 27,

Pl.'s Counter-Statement of Material Facts at ¶ 16; Dkt. No. 31, Defs.' Reply Statement at ¶ 16.

Shortly thereafter, Officer Hanley informed plaintiff that he was being charged with a misdemeanor

crime of Resisting Arrest and with the violation of Unlawful Possession of Marihuana, pursuant to

New York State Penal Law Section 221.05.  *See* Dkt. No. 27, Pl.'s Counter-Statement of Material

Facts at ¶¶ 14, 17; Dkt. No. 31, Defs.' Reply Statement at ¶¶ 14, 17; Dkt. No. 25, Defs.' Statement

of Material Facts at ¶ 23.  Plaintiff was jailed overnight at the Justice Center and appeared in City

Court the next morning before Judge Brian DeJoseph.  On August 22, 2000, the City Court dismissed the Resisting Arrest and the Imprudent Use of a Skateboard charges, but plaintiff plead guilty to the unlawful possession of marijuana violation and paid a fine of $100.  *See* Dkt. No. 27, Pl.'s Counter-Statement of Material Facts at ¶ 18; Dkt. No. 31, Defs.' Reply Statement at ¶ 18; Dkt. No. 32, Finn Aff. at Ex. O.  The next day, plaintiff sought medical attention for injuries he allegedly sustained during the course of his arrest.  *See* Dkt. No. 27, Pl.'s Counter-Statement of Material Facts at ¶ 19; Dkt. No. 31, Defs.' Reply Statement at ¶ 19.  Specifically, plaintiff complains of a partial rotator cuff tear with secondary impingement.  Id.

## DISCUSSION

### I.   Summary Judgment

The standard for summary judgment is familiar and well-settled.  Rule 56 allows for summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L. Ed. 2d 265 (1991) (quoting FED.R.CIV.P. 1).  A court may grant a motion for summary judgment when the moving party carries its burden of showing that no triable issues of fact exist.  *See* Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir.1990).  In light of this burden, any inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party.  *See* id.; United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L. Ed. 2d 176 (1962) (per curiam).  If the moving party meets its burden, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).  The role of the court on a motion for summary judgment is not to

try issues of fact but only to determine whether there are issues of fact to be tried. *See*, *e.g.*, Anderson, 477 U.S. at 255, 106 S.Ct. at 2513; Gallo v. Prudential Residential Services, Limited Partnership, 22 F.3d 1219, 1223-24 (2d Cir.1994); Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 58 (2d Cir.1987). The drawing of inferences and the assessment of the credibility of the witnesses remain within the province of the finders of fact. To defeat a motion for summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L. Ed. 2d 538 (1986). A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510. When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper. *See* Anderson, 477 U.S. at 250-251, 106 S.Ct. at 2511.

## II.   Excessive Force

### A.   The City

In the fifth cause of action of his Amended Verified Complaint, plaintiff asserts that the City "used and exercised unreasonable force against [him] in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. § 1983." *See* Dkt. No. 32, Finn Decl. at Ex. E, Am. V. Compl. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish liability under 42 U.S.C. § 1983 against a municipality for conduct by employees such as police officers, a plaintiff must show that the claimed constitutional violation

resulted from a municipal custom or policy.  *See* <u>Monell v. New York City Dep't. of Social Services</u>, 436 U.S. 658, 691-95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.").  "Custom" denotes "persistent and widespread . . . practices," *see* <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 167, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970), and thus "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823-34, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 79 (1985).  In addition, there is no respondeat superior liability against a municipality under 42 U.S.C. § 1983 for conduct by employees below the policymaking level. <u>Monell</u>, 436 U.S. at 691-95.

In his opposition papers, plaintiff argues not that the City maintains an official policy or custom whereby its police officers are to employ excessive force in the execution of their duties, but rather that it maintains an unconstitutionally vague policy with respect to identification in the context of the issuance of an appearance ticket.[5]  Plaintiff protests the SPD's Rules and Regulations Volume I, Article 3, Section 4.14(L) ("Regulation"), which states that "[a]n appearance ticket will not be issued when there exists a reasonable uncertainty as to the identity of the person charged." *See* Dkt. No. 32, Finn Aff. at Ex. J.  Plaintiff argues that it is the custom, practice and policy of the SPD to allow the individual officer to determine, not by a set policy, but rather by simply by their own whim, what will constitute sufficient documentation for the issuance of an appearance ticket

---

[5]In his opposition papers, plaintiff inserts his vagueness argument under the rubric of "Excessive Force," and thus, the court similarly addresses it at this junction.

versus insufficient documentation and the resultant custodial arrest. *See* Dkt. No. 28, Pl.'s Mem. of Law at 6.

Plaintiff argues that the City's policy allowed Officers Goodeve and Hanley to disregard what they otherwise should have deemed credible sources of identification. In other words, plaintiff's expired Le Moyne College photographic identification card, plaintiff's mother's credit card, the insurance card, and the insurance bill should have sufficed to erase any "reasonable uncertainty" as to plaintiff's identity. To the allegedly deficient Regulation plaintiff attributes his: unreasonable seizure, arrest and handcuffing, bodily injury, transportation in the back of an SPD patrol vehicle, criminal charges, overnight jailing, and appearance in court. *See* Dkt. No. 28, Pl.'s Mem. of Law at 7.

In their moving papers, defendants largely dismiss plaintiff's argument that the City maintains an unconstitutionally vague policy, stating that plaintiff "will be unable to show the existence of a municipal policy or custom that caused the deprivation of his constitutional rights" and that there is no evidence that Officers Goodeve and Hanley "acted in furtherance of any custom, practice or policy of the [SPD] of using excessive force." *See* Dkt. No. 26, Defs.' Mem. of Law at 4-5.

The court rejects plaintiff's liability theory. The issue of plaintiff's identification arose *after* Officers Goodeve and Hanley restrained and handcuffed plaintiff. Such chronology negates any inference the court might draw suggesting that the excessive force Officers Goodeve and Hanley allegedly employed in securing plaintiff's arrest resulted from an unconstitutionally vague SPD identification regulation. Clearly, the police action of which plaintiff complains that can reasonably be considered manifestations of "excessive force" *i.e.*, unreasonable seizure, arrest, handcuffing, bodily injury, and the substantive conduct underlying some of the criminal charges, *i.e.*, the skateboarding and resisting arrest charges, occurred before his identity became an issue. Thus, the

court cannot say that the challenged Regulation caused or inflicted the alleged excessive force against plaintiff, and the court declines to impute liability to the City on this basis.

To the Regulation, plaintiff also attributes his City Court appearance. The court similarly rejects this argument. Even assuming *arguendo* that plaintiff's appearance in City Court constitutes a manifestation of excessive force, the substantive conduct underlying plaintiff's skateboarding and resisting arrest charges also occurred before plaintiff's identity became an issue. Therefore, plaintiff's appearance in court was all but assured before plaintiff's identity became an issue. Thus, the court cannot say that plaintiff's appearance in City Court resulted from the challenged Regulation.

Plaintiff also attributes his transportation in the back of an SPD patrol vehicle, his unlawful possession of marijuana charge, and his overnight jailing to the challenged Regulation. Because these alleged violations occurred after plaintiff's identity became an issue, it is at least chronologically sound that they resulted from the challenged policy. The court, however, finds plaintiff's argument misplaced in that neither the unlawful possession of marihuana charge nor plaintiff's overnight jailing can reasonably be construed to support a claim of excessive force in its conventional understanding. Nevertheless, to any extent that plaintiff has succeeded in challenging the Regulation as unconstitutionally vague, the court proceeds with a void-for-vagueness analysis of the Regulation.[6]

The Supreme Court has made clear that where, as here, a statute does not implicate First Amendment interests, "the statute is judged on an as-applied basis." Maynard v. Cartwright, 486 U.S. 356, 361, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) (citing cases); accord United States v. Whittaker, 999 F.2d 38, 42 (2d Cir.1993); United States v. Nadi, 996 F.2d 548, 550 (2d Cir. 1993).

_____

[6]The Regulation is not a statute, nor does it proscribe any conduct per se; nonetheless, the court, finding the nature of plaintiff's argument sufficiently analogous, will analyze for vagueness under Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) and its progeny.

Courts apply a two-pronged test to determine whether a statute is unconstitutionally vague as applied. "[T]he court must first determine whether the statute 'give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited' and then consider whether the law 'provide[s] explicit standards for those who apply [it].'" United States v. Schneiderman, 968 F.2d 1564, 1568 (2d Cir.1992) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)) (some alterations in original).  As to the first prong, "the complainant must prove that the enactment is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all."  Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 n. 7, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (citations and internal quotation marks omitted).  As to the second prong, an enactment fails to provide sufficiently explicit standards for those who apply it when it "impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an ad hoc and subjective basis."  Grayned, 408 U.S. at 108-09, 92 S.Ct. at 2299.  Nevertheless, "[e]ffective law enforcement often 'requires the exercise of some degree of police judgment' but this alone does not render a statute unconstitutional." Schneiderman, 968 F.2d at 1568 (quoting Grayned, 408 U.S. at 114, 92 S.Ct. at 2302); see also Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed. 367 (1952) ("[M]ost statutes must deal with the untold and unforeseen variations on factual situations and the practical necessities of discharging the business of government inevitably limit[s] the specificity with which legislatures can spell out prohibitions.").

On its face, the Regulation expressly prohibits nothing: "[a]n appearance ticket will not be issued when there exists a reasonable uncertainty as to the identity of the person charged."  Indeed, the Regulation specifies no standard of conduct to which persons of ordinary intelligence must conform, and yet, that is not particularly noteworthy because the Regulation is necessarily tailored

to a much more narrow segment of the population: members of the SPD.  The Regulation is a subpart of an operating procedure that defines the circumstances in which officers may issue an appearance ticket.  In this sense, the Regulation specifies a standard to which members of the SPD must conform their conduct and thus satisfies the first prong.  As to the second prong, the Regulation delegates to police officers some discretion in that an individual officer must exercise his or her judgment to determine if there exists a "reasonable uncertainty" as to the identity of the person being charged.       Given the wide range of statutory language of variable meaning that has passed constitutional muster on this prong, however, the court cannot say that the phrase "reasonable uncertainty" when paired with the officer's task of establishing a person's identity, encourages arbitrary enforcement.  Indeed, "courts have routinely upheld against vagueness challenges the use of language in a statute that is not capable of precise application but rather calls for an exercise in judgment on the part of an interpreter of the statutory language." Mannix v. Phillips, 390 F.Supp.2d 280, 292 (S.D.N.Y. 2005) (citing United States v. X-Citement Video, Inc., 513 U.S. 64, 78-79, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) ("lascivious"); Parker v. Levy, 417 U.S. 733, 752- 58, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) ("conduct unbecoming an officer"); Karlin v. Foust, 188 F.3d 446, 459-68 (7th Cir. 1999) (upholding against vagueness challenge abortion statute using the phrase "reasonable medical judgment"); United States v. Monroe, 178 F.3d 304, 308-09 (5th Cir. 1999) ("maliciously"), cert. denied, 528 U.S. 1010, 120 S.Ct. 511, 145 L.Ed.2d 395 (1999); United States v. Ashman, 979 F.2d 469, 487 (7th Cir. 1992) ("pattern of racketeering activity"), cert. denied, 510 U.S. 814, 114 S.Ct. 62, 126 L.Ed.2d 32 (1993); Sharkey's, Inc. v. City of Waukesha, 265 F.Supp.2d 984, 992-94 (E.D.Wis. 2003) ("unreasonably") ("[a]n objective test . . . helps to guard against the risk of arbitrary enforcement"); United States v. Mitlof, 165 F.Supp.2d 558, 561-62 (S.D.N.Y. 2001) ("fraud, neglect, connivance, misconduct, or violation of law"); United States v. Fitzgerald, 676 F.Supp. 949, 952 (N.D.Cal. 1987) ("serious bodily injury")).  Thus, the SPD Regulation is not

unconstitutionally vague and defendants' motion for summary judgment as to the City's liability on plaintiff's excessive force claim is GRANTED.

B.     *Officers Goodeve and Hanley*

In the fifth cause of action of his Amended Verified Complaint, plaintiff asserts that Officers Goodeve and Hanley "used and exercised unreasonable force against [him] in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. § 1983." *See* Dkt. No. 32, Finn Decl. at Ex. E, Am. V. Compl.  To establish liability under § 1983 plaintiff must satisfy two essential elements: (1) defendants acted under color of state law; and (2) as a result of defendants' actions, plaintiff suffered a denial of his constitutional rights or privileges. *See* Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir.1998).  Courts are to analyze claims for excessive force under the Fourth Amendment's "objective reasonableness" standard.  Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).  "[T]o establish that the use of force to effect an arrest was unreasonable and therefore a violation of the Fourth Amendment, plaintiff[] must establish that the government interests at stake were outweighed by 'the nature and quality of the intrusion on [plaintiff's] Fourth Amendment interests.'"  Amnesty America v. Town of West Hartford, 361 F.3d 113, 123 (2d Cir. 2004) (citing Graham, 490 U.S. at 396).  The Supreme Court held that in determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of numerous factors including the severity of the crime at issue, whether the person is attempting to flee or resist arrest, and whether the suspect poses a threat to the safety of the officers or others.  Graham, 490 U.S. at 396, 109 S.Ct. 1865.  "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' occurring during an arrest constitutes excessive force within the meaning of the Fourth Amendment."  Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable

officer on the scene, rather than with the 20/20 vision of hindsight." Id. (citing Terry v. Ohio, 392 U.S. 1, 20-22, 88 S.Ct., 1868, 1879-1881, 20 L.Ed.2d 889 (1968)). Generally, the force used by a defendant must be more than *de minimis* in order for a plaintiff's claim to be actionable. Id. 490 U.S. at 397, 109 S.Ct. 1865; Romano v. Howarth, 998 F.2d 101, 105 (2d Cir.1993).

To succeed on a claim of excessive force, plaintiff must put forth evidence that the defendants' conduct was "objectively sufficiently serious or harmful . . . ." United States v. Walsh, 194 F.3d 37, 50 (2d Cir.1999). A plaintiff must also allege, and support with evidence, the personal involvement of a defendant in the actions underlying their claim. *See* Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (personal involvement of defendant is predicate for award for damages under § 1983). "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." Amnesty America, 361 F.3d at 123 (citing O'Bert v. Vargo, 331 F.3d 29, 37 (2d Cir.2003)).

Here, as to the severity of the crime, the court finds the offense, a violation of a City ordinance, unremarkable if not *de minimis*, which might tend to suggest that the use of force was unreasonable. Beyond this observation, due to the inconsistencies between the parties' accounts, as described above, the court cannot say whether plaintiff was attempting to flee or whether he struggled against Officers Goodeve and Hanley, nor can it determine whether plaintiff merely fell or whether he was picked-up and shoved to the ground. Clearly there remains an issue of fact as to the circumstances surrounding plaintiff's arrest and as to the reasonableness of the force Officers Goodeve and Hanley used to effect the arrest, which precludes the entry of summary judgment. *See* Breen v. Garrison, 169 F.3d 152, 153 (2d Cir.1999) (explaining where the parties' versions of the facts differed markedly, "[t]he issue of excessive force was . . . for the jury, whose unique task it was to determine the amount of excessive force used, the seriousness of the injuries, and the objective

reasonableness of the officer's conduct").  Defendants' motion for summary judgment as to plaintiff's claim for excessive force against Officers Goodeve and Hanley is DENIED.

### III.    Assault and Battery Cause of Action

In the first cause of action of his Amended Verified Complaint, plaintiff asserts that Officers Goodeve and Hanley, in the course of their employment with the SPD, committed assault and battery against him.  *See* Dkt. No. 32, Finn Decl. at Ex. E, Am. V. Compl.  Assault is "an intentional placing of another person in fear of imminent harmful or offensive contact."  United Nat'l Ins. Co. v. Waterfront New York Realty Corp., 994 F.2d 105, 108 (2d Cir.1993).  Battery is "an intentional wrongful physical contact with another person without consent."  Waterfront, 994 F.2d at 108 (citations omitted).  Intent is an element of both torts, but the plaintiff need only offer evidence that "there was bodily contact; that such contact was offensive; and that the defendant intended to make the contact."  Masters v. Becker, 254 N.Y.S.2d 633, 635 (2d Dep't 1964).  Plaintiff need only show that defendants intended the contact, not that they intended the specific harm.  *See* Rivera v. Puerto Rican Home Attendants Servs. Inc., 930 F.Supp. 124, 133 (S.D.N.Y. 1996) (recognizing that "the intent requisite to an assault under New York law is the intent either to inflict personal injury or to arouse apprehension of harmful or offensive bodily contact.

Because plaintiff's claims for assault and battery parallel plaintiff's excessive force claims and involve questions of fact as detailed above, defendants motion for summary judgment as to plaintiff's assault and battery claims against Officers Goodeve and Hanley is DENIED.  *See* LaLonde v. Bates, 166 F.Supp.2d 713, 719 (N.D.N.Y. 2001).

### IV.    Negligence

In the third cause of action of his Amended Verified Complaint, plaintiff attempts to assert several causes of action under a theory of negligence.  Plaintiff's opposition papers, however, narrow and clarify the scope of the theory.  Plaintiff asserts that the City negligently employs,

supervises and trains members of the SPD.  More specifically, plaintiff asserts that the City fails to adequately train, advise and instruct its police officers in the issuance of appearance tickets such that they are without specific guidance and adequate training as to what documentation is sufficient to establish identity in instances not unlike plaintiff's arrest.  Plaintiff also asserts that the City's training of its officers respecting the use of force is improper.  *See* Dkt. No. 28, Pl.'s Mem. of Law at 6-7.

Defendants assert that there is no evidence that the SPD had a custom, practice or policy of failing to supervise, train or discipline its officers.  Defendants argue that plaintiff failed to conduct any discovery with regard to the type and extent of training Officers Goodeve and Hanley received or with regard to supervisory and/or disciplinary procedures of the SPD.  Defendants contend that the absence of such discovery tends to negate any cause of action asserted against Officers Goodeve and Hanley in their individual capacities.  According to defendants, plaintiff limited his discovery demands to SPD procedures regarding the issuance of appearance tickets and the use of force and handcuffs, which defendants provided to him.  Defendants argue that the fact that the SPD has a written procedure specifically regarding the issuance of appearance tickets and the use of force and handcuffs, in addition to the training SPD officers receive at the SPD Basic Training Academy, disproves plaintiff's theory of negligence.  Defendants argue that plaintiff's bald allegations do not suffice to prove an unlawful policy.

"[A] single incident in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."  Ricciuti v. New York City Transit Authority, 941 F.2d 119, 123 (2d Cir.1991).  To allow evidence of a single occurrence to establish a municipal policy of failing to properly train and supervise, without any proof regarding the nature of the training itself, would "unduly threaten [a municipality's] immunity from respondeat superior liability."  Tuttle, 471 U.S. at 830, 105 S.Ct. 2427.  Furthermore, "[t]he mere allegation that

the municipality failed to train its employees properly is insufficient to establish a municipal custom or policy." Neighbour v. Covert, 68 F.3d 1508, 1512 (2d Cir.1995). Finally, the failure to train, supervise, or discipline employees must rise to the level of "deliberate indifference." City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir.1993). In City of Canton, the Supreme Court established that a municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training. See City of Canton, 489 U.S. at 387-90, 109 S.Ct. 1197.

Plaintiff contends, if by inference only, that he has proffered sufficient evidence for a reasonable factfinder to conclude that the City's failure to train constituted deliberate indifference within the meaning of City of Canton. The court disagrees. "Deliberate indifference" occurs where "conscious disregard" is displayed for the consequences of actions, not just "simple or even heightened negligence." Bd. of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). To prove "deliberate indifference," a plaintiff must demonstrate that: (1) "a policymaker knows 'to a moral certainty' that [his or] her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the [municipal] employee will frequently cause the deprivation of a citizen's constitutional rights." Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir.1992) (internal quotations and citations omitted). City of Canton requires that plaintiff establish not only that the City's purported failure to train occurred under circumstances that could constitute deliberate indifference, but also that plaintiff identify a specific deficiency in the City's training program and establish that the deficiency is "closely related to the ultimate injury," such that it "actually caused" the constitutional deprivation. City of Canton,

489 U.S. at 391, 109 S.Ct. 1197.  Thus, the Supreme Court emphasized in <u>City of Canton</u> that a plaintiff must establish that "the officer's shortcomings . . . resulted from . . . a faulty training program" rather than from the negligent administration of a sound program or other unrelated circumstances.[7]  <u>City of Canton</u>, 489 U.S. at 390-91, 109 S.Ct. 1197.  A plaintiff must go beyond a conclusory claim of a need for training and demonstrate "how a particular policymaker's specific choice with respect to the alleged training deficiency at issue reflects 'deliberate indifference' to their constitutional rights, and how this indifference caused their injuries." <u>Ferreira v. Westchester County</u>, 917 F.Supp. 209, 215-16 (S.D.N.Y.1996).  "In virtually every instance where a person has had his or her constitutional rights violated by a [municipal] employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." <i>See</i> <u>City Of Canton</u>, 489 U.S. at 392, 109 S.Ct. 1197.  As the Supreme Court said, to allow a plaintiff to proceed on such a theory would "engage the federal courts in an endless exercise of second-guessing municipal employee-training programs.  This is an exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism." <u>Id.</u>

Here, plaintiff, in essence, alleges that the lack of training played some part in his alleged injuries, but he offers no evidence to demonstrate that the City's training program, or lack thereof, amounted to a deliberate indifference to his rights.  Plaintiff has failed to allege more than a single incident and has failed to offer any evidence as to the purported inadequacies in the City's training program and the causal relationship between those inadequacies and the alleged constitutional violations.  Plaintiff has failed to demonstrate that any City policymaker knew to a moral certainty that his or her employees would confront a given situation; that the situation either presented the employee with a difficult choice of the sort that training or supervision would make less difficult or

---

[7]Plaintiff's argument seemingly ignores this standard.  Plaintiff cites Officer Hanley's deposition testimony that he, as well as Officer Goodeve, received instruction at the SPD Basic Training Academy regarding the "continuum of force model," without any further explanation.  <i>See</i> Dkt. No. 28, Pl.'s Mem. of Law at 6-7.

that there is a history of employees mishandling the situation; and that the wrong choice by the City employee will frequently cause the deprivation of a citizen's constitutional rights. Similarly, plaintiff has offered no proof that Officers Goodeve and Hanley were subjected to insufficient training or were denied any training at all, or that they were not subject to the same training every other SPD officer was required to undertake. In short, plaintiff has failed to demonstrate a causal link between the alleged lack of, or insufficient, training and his alleged injuries.

Deliberate indifference may also be inferred from a failure to supervise, such as when meaningful attempts to investigate repeated claims of excessive force are absent. Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995). The existence of repeated complaints, however, is not sufficient; rather, it is the combination of such complaints with the municipality's response which "tip[s] the scales toward the probative." Mendoza v. City of Rome, 872 F.Supp. 1110, 1118 (N.D.N.Y.1994). For deliberate indifference to be shown, the response must amount to a persistent failure to investigate the complaints or discipline those whose conduct prompted the complaints. Fiacco v. City of Rensselaer, 783 F.2d 319, 328 (2d Cir.1986) (knowledge of prior allegations of excessive force can form the basis of a finding of deliberate indifference, even where "none of the claims ha[s] yet been adjudicated in favor of the claimant," so long as "the [municipality's] efforts to evaluate the claims were so superficial as to suggest that its official attitude was one of the indifference to the truth of the claim"). Simple disagreement with the nature or extent of punishment imposed on an official as a result of his actions will not demonstrate a municipal policy of failure to supervise. *See* Sarus v. Rotundo, 831 F.2d 397, 401-02 (2d Cir.1987).

With respect to negligent supervision, plaintiff has again failed to allege more than a single incident and has failed to offer any evidence as to the purported inadequacies in the SPD's supervision of its officers and the causal relationship between those inadequacies and the alleged constitutional violations. Defendants' motion for summary judgment as to plaintiff's claim for

negligent employment, supervision and training is GRANTED.

**V.     False Arrest**

A cause of action for false arrest can be brought either as a violation of state tort law or as a violation of § 1983 based on an unreasonable seizure under the Fourth Amendment.  Analysis of the state and federal claims is identical.  *See* <u>Savino v. City of New York</u>, 331 F.3d 63, 75 (2d Cir.2003).  In the second cause of action of his Amended Verified Complaint, plaintiff asserts that Officers Goodeve and Hanley, in the course of their employment with the SPD, falsely arrested and imprisoned him.   *See* Dkt. No. 32, Finn Decl. at Ex. E, Am. V. Compl.  "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause (citation omitted), is substantially the same as a claim for false arrest under New York law."  <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996).  Under New York law, the elements of a false imprisonment [or false arrest] claim are: (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.  A favorable termination of the proceedings is not an element of this tort.  <u>Weyant</u>, 101 F.3d at 853 (internal citations and quotation marks omitted) (emphasis omitted).

Here, it is clear that defendants intended to confine plaintiff, that plaintiff was aware of his confinement, and that plaintiff did not consent to the confinement.  Thus, plaintiff easily satisfies the first three elements.  Police officers, however, are empowered to effect an arrest based on probable cause, and "the existence of probable cause to arrest . . . is a complete defense to an action for false arrest."  <u>Provost v. City of Newburgh</u>, 262 F.3d 146, 157 (2d Cir.2001).  When an arrest is made without a warrant and probable cause is raised as a defense, the government bears the burden to demonstrate the existence of probable cause.  *See* <u>Wu v. City of New York</u>, 934 F.Supp. 581, 586 (S.D.N.Y.1996).

Probable cause to arrest is present when law enforcement officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir.1999); *see also* N.Y. CRIM. PROC. § 140.10(1)(a) (McKinney 2004). In evaluating the probable cause determination, the court "consider[s] the facts available to the officer at the time of the arrest" and the conclusions those facts reasonably support. Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir.1997) (citing Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir.1996)); *see also* N.Y. CRIM. PROC. § 70.10(2) (McKinney 2004). The inquiry is an objective one and the subjective beliefs or motivations of the arresting officer are irrelevant. Whren v. United States, 517 U.S. 806, 812- 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). "In fact, the eventual disposition of the criminal charges is irrelevant to the probable cause determination." Hahn v. County of Otsego, 820 F.Supp. 54, 55 (N.D.N.Y. 1993).

Here, Officers Goodeve and Hanley arrested plaintiff for: violating the City's Revised General Ordinance § 16.14.1(2), resisting arrest, pursuant to N.Y. PENAL § 205.30, and unlawful possession of marihuana, pursuant to N.Y. PENAL § 221.05. Under the above standard, Officers Goodeve and Hanley had probable cause to arrest plaintiff for at least two of the three charges.

As to the resisting arrest charge, factual disputes remain as to that issue: the court cannot say that plaintiff intentionally attempted to prevent his arrest, *see* Curry v. City of Syracuse, 316 F.3d 324, 336 (2d Cir. 2003), and consequently, the court cannot say that Officers Goodeve and Hanley had probable cause to arrest plaintiff for resisting arrest. Therefore, defendants' motion for summary judgment as to the resisting arrest charge of plaintiff's false arrest claim is DENIED.

It is undisputed, however, that at the time of plaintiff's arrest, Officers Goodeve and Hanley had observed plaintiff skateboarding in an area where that activity was prohibited. This observation allowed them to reasonably conclude that plaintiff had committed a crime. Officers Goodeve and

Hanley had probable cause to arrest plaintiff for violating the City's Revised General Ordinance § 16.14.1(2). It is also undisputed that at the time of plaintiff's arrest, plaintiff was in possession of marihuana. An SPD officer found a plastic baggie of marihuana in the back seat of the patrol car used to transport plaintiff to the Justice Center, which was previously void of contraband. From this fact, Officers Goodeve and Hanley reasonably concluded that plaintiff had committed a crime. Officers Goodeve and Hanley had probable cause to arrest plaintiff for unlawful possession of marihuana, pursuant to N.Y. PENAL § 221.05.

The court must also consider whether Officers Goodeve and Hanley were justified in making a custodial arrest of plaintiff. Both the skateboarding and unlawful possession of marihuana charges are violations. Typically, an officer who arrests someone for committing a violation will issue a court appearance ticket rather than make a custodial arrest. Certain circumstances, however, permit an SPD officer to make a custodial arrest for committing a violation. SPD Rules and Regulations Volume 1, Article 3, §§ 4.14 and 6.11 set forth the conditions under which an SPD officer may issue an appearance ticket and when an officer must instead make a custodial arrest. The Rules and Regulations provide that an arresting officer will not issue an appearance ticket: when the suspect appears to be under the influence of alcohol, narcotics or other drugs–§ 4.14(I); when the arrest involves the possession of a controlled substance,[8] or the sale of marijuana–§ 4.14(J); when the violation or offense my recur if the suspect is not physically detained; and "when there exists a reasonable uncertainty as to the identity of the person charged"–4.14(L). *See* Dkt. No. 32, Finn Aff. at Ex. J. Section 6.11(A)(2) provides that a custodial arrest will be made for offenses where an appearance ticket "would not be sufficient to assure the suspect's appearance in court." Id. While

---

[8]In accordance with New York Criminal Procedure Law § 150.75, § 4.14(D) provides that when a defendant has been arrested for Unlawful Possession of Marijuana (Penal Law 221.05) and no other offense is charged, an appearance ticket must be issued. *See* Dkt. No. 32, Finn Aff. at Ex. J.

the unlawful possession of marihuana charge does not permit a custodial arrest, when read in concert, §§ 4.14(L) and 6.11(A)(2) permit, if not require, an arresting SPD officer to take a suspect into custody for a skateboard violation where there is a reasonable uncertainty as to his or her identity. At the time of plaintiff's arrest, the facts available to Officers Goodeve and Hanley, which notably did not include current photographic identification bearing plaintiff's address, permitted them to conclude that a reasonable uncertainty existed as to plaintiff's identity. Considering the totality of the circumstances, Officers Goodeve and Hanley had probable cause to arrest plaintiff for the skateboarding violation, and coupled with the lack of proper identification, take him into custody. Therefore, defendants' motion for summary judgment as to the skateboarding and unlawful possession of marihuana charges of plaintiff's false arrest and unlawful detention claims against Officers Goodeve and Hanley is GRANTED.

## VI.   Malicious Prosecution

In the second cause of action of his Amended Verified Complaint, plaintiff asserts that the "City . . . acted with actual malice and commenced and continued a criminal prosecution against the plaintiff without reasonable justification or probably [sic] cause therefor." *See* Dkt. No. 32, Finn Decl. at Ex. E, Am. V. Compl. Plaintiff concedes that the issuance of the appearance ticket for the unlawful possession of marihuana was not improper and thus tailors his arguments to the skateboarding and resisting arrest charges. *See* Dkt. No. 27, Pl.'s Mem. of Law at 16-17. The elements of malicious prosecution under § 1983 are "substantially the same" as the elements under New York law. Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir.1992). Therefore, the analysis of the state and the federal claims is identical. To make out a claim for malicious prosecution, a plaintiff must prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Russell v. Smith, 68

F.3d 33, 36 (2d Cir.1995).

>    A.    *Initiation of Criminal Proceedings*

With regard to the first element, New York Criminal Procedure Law provides that "[a] criminal action is commenced by the filing of an accusatory instrument with a criminal court . . . ." N.Y.CRIM. PROC. § 100.05 (McKinney 2004).  In the case at bar, defendants concede that they commenced criminal proceedings against plaintiff, and thus plaintiff has established the first element of his malicious prosecution claim.

>    B.    *Termination of the Proceeding in Plaintiff's Favor*

The second element, termination of the underlying proceedings in plaintiff's favor, presents a more difficult question.  Defendants assert that plaintiff's guilty plea to the unauthorized possession of marihuana charge is dispositive of the entire matter.  While defendants concede the fact that two of the three charges were dismissed, they argue that in light of the guilty plea, the proceedings did not terminate in plaintiff's favor.  *See* Dkt. No. 26, Defs.' Mem. of law at 17. Defendants' argument fails.

In Janetka v. Dabe, the Second Circuit explained that "[i]f the dispositive factor is whether . . . the charge resulting in acquittal 'arose out of events that occurred on the same occasion' as a charge resulting in conviction, then police officers could add unsupported serious charges to legitimate minor charges with impunity."  892 F.2d 187, 190 (2d Cir.1989).  Consequently, the Second Circuit held that although Janetka had been found guilty of disorderly conduct, the fact that he had been found not guilty as to resisting arrest–a charge arising from the same underlying incident–supported a "favorable termination."  Id.  Similarly, the court cannot say that plaintiff's guilty plea as to the unlawful possession of marihuana charge, per se, negates any malicious prosecution claim plaintiff might otherwise pursue as to the skateboarding and resisting arrest charges, which were dismissed.  Because plaintiff was not acquitted of the other charges, however,

the court must continue its inquiry.

The Second Circuit has held that a plaintiff "must alleg[e] and prov[e] that the prosecution terminated in some manner indicating that the person was not guilty of the offense charged" in order to satisfy the favorable termination prong of the prima facie test for malicious prosecution. Singleton v. City of New York, 632 F.2d 185, 195 (2d Cir.1980). "Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused . . . only when its final disposition is such as to indicate the innocence of the accused." Murphy v. Lynn, 118 F.3d 938, 948 (2d Cir. 1997); (citing MacFawn v. Kresler, 88 N.Y.2d 859, 860, 644 N.Y.S.2d 486, 666 N.E.2d 1359 (1996) (explaining that a favorable termination happens "when the final disposition of the proceeding involves the merits and indicates the accused's innocence"); O'Brien v. Alexander, 101 F.3d 1479, 1486-87 (2d Cir.1996) (discussing cases); Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995) ("In the absence of a decision on the merits, the plaintiff must show that the final disposition is indicative of innocence.")). Whether the termination is indicative of innocence depends on the nature and circumstances of the termination; the dispositive inquiry is whether the failure to proceed "impl[ies] a lack of reasonable grounds for the prosecution." Murphy, 118 F.3d at 948 (citing Loeb v. Teitelbaum, 77 A.D.2d 92, 101, 432 N.Y.S.2d 487, 494 (2d Dep't 1980)).

Certain dismissals "that do not result from an adjudication of the merits have generally been held not sufficiently favorable to the accused to be indicative of innocence." Murphy, 118 F.3d at 948 (citing Heaney v. Purdy, 29 N.Y.2d 157, 159-60, 324 N.Y.S.2d 47, 49, 272 N.E.2d 550 (1971) (dismissals for lack of subject matter jurisdiction); MacFawn, 88 N.Y.2d at 860, 644 N.Y.S.2d at 487 (dismissals pursuant to N.Y.CRIM. PROC. § 170.30(1)(a) for failure to allege sufficient facts to support the charge). Other types of dismissals that preclude further prosecution on the same charges are deemed not to be favorable to the accused for purposes of a malicious prosecution claim. Such dismissals include "adjournment[s] in contemplation of dismissal," *see, e.g.*, Hollender v. Trump

Village Cooperative, Inc., 58 N.Y.2d 420, 424-26, 461 N.Y.S.2d 765, 767-68, 448 N.E.2d 432 (1983), which are conditional dismissals that become final if the accused meets certain criteria during a six-month period.  *See* N.Y. CRIM. PROC. § 170.55 (McKinney 1999).  "Similarly, dismissals by the prosecution 'in the interests of justice' under N.Y. CRIM. PROC. § 170.40, are generally considered not to be dispositions in favor of the accused."  Murphy, 118 F.3d at 949 (citing MacLeay v. Arden Hill Hospital, 164 A.D.2d 228, 230-31, 563 N.Y.S.2d 333, 334-35 (3d Dep't 1990); Miller v. Star, 123 A.D.2d 750, 751, 507 N.Y.S.2d 223, 224 (2d Dep't 1986); Hygh, 961 F.2d at 368 ("as a matter of law" a dismissal in the interests of justice "cannot provide the favorable termination required as the basis for a claim of malicious prosecution").

Here, the record is bereft of any reference to a statutory provision upon which Judge DeJoseph's dismissals of the charges might have been based, nor is there any indication that Judge DeJoseph reached or intended to reach the merits of the charges he dismissed.  "[W]hen the grounds for the dismissal of a criminal proceeding are unclear, New York courts consider whether the proceeding was terminated in plaintiff's favor to be a question of fact that prevents summary judgment.  Rounseville v. Zahl, 13 F.3d 625, 629 (2d Cir. 1994) (citing Allen v. Town of Colonie, 182 A.D.2d 998, 1000, 583 N.Y.S.2d 24, 26 (3d Dep't 1992) (stating that plaintiff was not initially required to come forward with proof that a proceeding was terminated in his favor)).  Here, the facts surrounding the dismissals of the skateboarding and resisting arrest charges, if not in dispute, are at least unknown to this court, thus precluding a summary judgment dismissal of the malicious prosecution claim based on this element.  *See* Rounseville, 13 F.3d at 629.

C.    *Probable Cause*

As with a false arrest claim, the existence of probable cause entitles the defendants to summary judgment, *see* Broughton v. State, 37 N.Y.2d 451, 456-57, 373 N.Y.S.2d 87, 92-93, 335 N.E.2d 310 (1975), but because the "probable cause determination relevant to a malicious

prosecution claim differs from that relevant to a false arrest claim," Mejia v. City of New York, 119 F.Supp.2d 232, 254 (E.D.N.Y.2000), the court must consider the issue separately.  The Second Circuit, however, has clarified, that in order for probable cause that existed at the time of arrest to "dissipate" prior to commencement of prosecution, "the groundless nature of the charge must be made apparent [to the defendants] by the discovery of some intervening fact."  *See* Kinzer v. Jackson, 316 F.3d 139, 144 (2d Cir. 2003) (quoting Lowth v. Town of Cheektowaga, 83 F.3d 563, 571 (2d Cir.1996)).

For purposes of malicious prosecution, probable cause has been defined as "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of," Rounseville, 13 F.3d at 629, or whether "a discreet and prudent person would be led to the belief that a crime had been committed by the person charged."  Loeb, 77 A.D.2d at 103, 432 N.Y.S.2d at 494-95.  "The existence of probable cause is measured as of the time the prosecution was initiated and is based on facts known to or believed to be true by the defendant at that time."  Id. (citations omitted).

As to the resisting arrest charge, factual disputes remain as to that issue and consequently, the court cannot say that defendants had probable cause to prosecute plaintiff for resisting arrest. The court has already found that defendants had probable cause to arrest plaintiff for the skateboarding and unlawful possession of marihuana charges, and the record reveals that no intervening fact emerged to dissipate the probable cause that existed at the arrest stage prior to the commencement of the prosecution.  Thus, the court similarly finds that defendants had probable cause to commence a criminal prosecution.  *See* Kinzer, 316 F.3d at 144.  Therefore, plaintiff's malicious prosecution claim as to resisting arrest satisfies the third element for lack of probable cause while the probable cause finding as to the prosecution of the skateboarding and unlawful possession of marihuana charges entitles defendants to summary judgment without further analysis.

Defendants' motion for summary judgment as to the skateboarding and unlawful possession of marihuana charges in relation to plaintiff's malicious prosecution claim is GRANTED.

     D.    *Actual Malice*

     The Second Circuit defines malice for purposes of a malicious prosecution claim as "wrong or improper motive, something other than a desire to see the ends of justice served." Lowth, 82 F.3d at 573 (quoting Nardelli v. Stamberg, 44 N.Y.2d 500, 406 N.Y.S.2d 443, 445, 377 N.E.2d 975 (1978)). This element is closely related to the lack of probable cause requirement. *See* Babi-Ali v. City of New York, 979 F.Supp. 268, 277 (S.D.N.Y. 1997) (citing Post v. Elser, 1996 WL 406843, at *8 (N.D.N.Y. July 19, 1996)). "In most cases, the lack of probable cause–while not dispositive–'tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.'" Lowth, 82 F.3d at 573 (quoting Conkey v. State, 74 A.D.2d 998, 427 N.Y.S.2d 330, 332 (4th Dep't.1980)). Here, a jury could infer malice from a lack of probable cause as to the resisting arrest charge, which is sufficiently in dispute to survive summary judgment. *See* Fowler v. Robinson, 1996 WL 67994, *9 (N.D.N.Y. Feb.15, 1996). Therefore, defendants' summary judgment motion as to the resisting arrest charge in relation to plaintiff's malicious prosecution claim is DENIED.

## VII.  Qualified Immunity

     Defendants assert that Officers Goodeve and Hanley are entitled to qualified immunity because they acted in good faith and in accordance with the law. They argue that plaintiff's causes of action for excessive force, assault and battery and false arrest should be dismissed as a matter of law. *See* Dkt. No. 26, Defs.' Mem. of Law at 19.

> [G]overnment officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. What this means in practice is that whether an official protected by qualified immunity may be held personally liable

> for an allegedly unlawful official action generally turns on the objective legal
> reasonableness of the action, assessed in light of the legal rules that were clearly
> established at the time it was taken.

Wilson v. Layne, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (internal citations and quotation marks omitted). Officers Goodeve and Hanley do not dispute that the right to be free from the use of excessive force was "clearly established" at the time they arrested plaintiff. *See*, *e.g.*, Mickle v. Morin, 297 F.3d 114, 122 (2d Cir.2002) (noting that it is "well established that the use of excessive force in the course of an arrest is constitutionally prohibited"). The question then becomes whether their actions were "objectively reasonable" in light of the circumstances. Thomas v. Roach, 165 F.3d 137, 142-43 (2d Cir. 1999) (explaining that "qualified immunity will be denied only if a reasonable official should have known that the challenged conduct violated that established right"). In the context of qualified immunity, "reasonable" requires the court to balance the same factors it considers in determining reasonable force under the Fourth Amendment: the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest. Id. at 143. The Supreme Court has held:

> The concern of the [qualified] immunity inquiry is to acknowledge that reasonable
> mistakes can be made as to the legal constraints on particular police conduct. It is
> sometimes difficult for an officer to determine how the relevant legal doctrine, here
> excessive force, will apply to the factual situation the officer confronts. An officer
> might correctly perceive all of the relevant facts but have a mistaken understanding
> as to whether a particular amount of force is legal in those circumstances. If the
> officer's mistake as to what the law requires is reasonable, however, the officer is
> entitled to the immunity defense.

Saucier v. Katz, 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

"Where the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." Mickle, 297 F.3d at 122 (internal citations and quotation marks omitted). In this case, the court is unable to satisfactorily determine

whether the officers reasonably believed that the level of force they employed was not excessive given that several material facts, as noted above, are still in dispute.  Accordingly, the court finds that there are triable issues of fact that preclude summary judgment. *See* <u>Oliveira v. Mayer</u>, 23 F.3d 642, 649 (2d Cir.1994) ("Though [qualified] immunity ordinarily should be decided by the court, that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required.") (citations and internal quotation marks omitted).  Defendants motion for summary judgment on their qualified immunity defense as to Officers Goodeve and Hanley is DENIED.

**CONCLUSION**

**WHEREFORE,** after careful consideration of the file in this matter including the parties' submissions, oral argument, and the applicable law, the court hereby

**GRANTS** defendants' motion for summary judgment as to: plaintiff's claim for excessive force against the City; the skateboarding and unlawful possession of marihuana charges of plaintiff's false arrest and unlawful detention claims against defendants; the skateboarding and unlawful possession of marihuana charges of plaintiff's malicious prosecution claim against defendants; and plaintiff's claim of negligent employment, supervision and training against defendants; furthermore, the court,

**DENIES** defendants' motion for summary judgment as to: plaintiff's claims for excessive force against Officers Goodeve and Hanley; plaintiff's claims for assault and battery against Officers Goodeve and Hanley; the resisting arrest charge of plaintiff's false arrest and unlawful detention claims against defendants; and the resisting arrest charge of plaintiff's malicious prosecution claim against defendants; and the motion for qualified immunity.

**IT IS SO ORDERED.**

Dated: January 13, 2006
Syracuse, New York

Howard G. Munson
Senior  U.S. District Judge